OPINION
{¶ 1} Defendant-appellant, Joshua Hale, appeals his conviction for rape following a jury trial in the Butler County Court of Common Pleas. We affirm the trial court's decision.
 {¶ 2} Hale was convicted of rape, with the specification that he used force or threatened to use force to commit the crime for using an object to penetrate the vagina of two-year-old M.D. M.D. is the daughter of Hale's girlfriend, Christy Couch.
 {¶ 3} On the morning of June 4, 1999, the child had been at her paternal grandmother's home. Her father, Randy Dalrymple, had permanent custody of the child, with Christy having visitation two days a week and alternate weekends. Randy picked up his daughter that morning and took her to the doctor, who examined the child for an ear infection.
 {¶ 4} At 4:00 p.m., Christy picked up the child for visitation. On the way home, Christy stopped off at Hale's mother's home to pick up her other child, Joshua Hale, Jr.[1] Upon arriving home, she and Hale argued. It was decided that Christy would go to the store to pick up pizza for dinner. Christy changed M.D.'s diaper in anticipation of the trip. However, Hale offered to take care of the children. Hale had changed the child's diaper before, but she had never left M.D. alone with Hale.
 {¶ 5} Christy returned home approximately an hour and a half later. She noticed that the child was in her high chair eating cheese and that she was whiny and appeared to have been crying. Hale told her that he changed the child's diaper. He also took the child out of the high chair and showed Christy a baseball-sized bite mark on her arm. Christy had not noticed the mark earlier, and it blackened during the course of the evening. Christy also noted that there was a red scrape on the child's left hand. Hale told her she received it after tripping over the cat.
 {¶ 6} Christy began cooking dinner while Hale changed the child's diaper again. When Christy questioned this action, Hale explained that the child told him she had "pooped." Christy had not heard the child make this statement. Christy became suspicious. She noted that the child was still whiny and upset and that Hale appeared nervous.
 {¶ 7} They ate dinner and afterwards played cards. Hale became angry that he was losing, threw down his cards and left. Christy got up and went to the trash can and pulled out the diaper that Hale had just changed. She noticed that it was bloody and contained bloody wipes. She laid down the diaper and then went to the child to check her diaper. When she opened up the diaper, she found that the child was covered in blood. She left that diaper on the TV and went to the emergency room.
 {¶ 8} Upon the first examination, the emergency room doctor noted a posterior vaginal tear, initially assuming that the child injured herself by falling on an object. Upon further examination, he noted that the tear went further into the child's vaginal cavity and concluded that it was the result of forced entry. Later, a doctor at Children's Hospital in the sexual abuse clinic concluded that there were two additional tears across the child's hymen caused by a deeply penetrating force that could not have been accidental.
 {¶ 9} Christy stated that although she had not told Hale where she was, he arrived at the emergency room approximately ten minutes after she did. She informed Hale that she pulled the bloody diaper out of the trash can, but he told her not to say anything because it would "make him look bad." She stated that he then gave her a pill, telling her it would help calm her down.
 {¶ 10} A grand jury indicted Hale for rape, with the specification that he used force or threatened to use force to commit the crime. After a November jury trial, the jury found him guilty. Hale filed a motion for a new trial, which the judge denied. The judge found that Hale was a sexual predator. Hale was then sentenced to a ten-year sentence for the rape, and a life sentence based upon the jury's finding that he used force. Hale appeals, raising four assignments of error.
Assignment of Error No. 1:
 {¶ 11} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT REFUSED TO GRANT A MISTRIAL AS A RESULT OF IMPROPER TESTIMONY."
 {¶ 12} Hale argues that a mistrial is required where Christy referenced a subsequent violent act committed by Hale during her testimony. He maintains that he was prejudiced by this testimony.
 {¶ 13} We utilize the abuse of discretion standard when reviewing a trial court's ruling on a motion for mistrial. State v. Simmons
(1989), 61 Ohio App.3d 514, 517. "In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable, and not merely an error of law or judgment." State v. Couch, Butler App. No. CA2001-06-132, 2002-Ohio-3347, citing to Koch v. Rist, 89 Ohio St.3d 250, 251,2000-Ohio-149.
 {¶ 14} Although not known to the jury, Hale was serving a sentence for the shooting of a firearm into Randy Dalymple's home. During Christy's direct examination, she made an unsolicited comment concerning this event. The following dialogue transpired:
 {¶ 15} "Q. When was the last time you had a conversation with the defendant?
 {¶ 16} "A. The night that he shot through the house — [.]"
 {¶ 17} Hale's defense counsel immediately objected and asked to approach the bench. A bench conference was held. During the conference, Hale's attorney moved for a mistrial. The trial judge stated that he did not hear Christy's statement, noting that he was sitting closer to her than the jury and so doubted that the jury heard the statement.
 {¶ 18} The trial court overruled the motion for mistrial. It instructed the prosecutor "not to ask any questions that would elicit a response regarding an alleged shooting * * *." The trial court also instructed Christy to "respond to the question that is asked." It then sustained the original objection. Finally, the trial court gave the following instruction to the jury:
 {¶ 19} ". . . Ladies and gentlemen, there was an objection at a sidebar a moment ago — the witness — whatever response the witness made at that point, the jury is instructed to disregard — both question and the response. Now, what that means, ladies and gentlemen, is that it cannot be considered for any purpose whatsoever. . . .[.]"
 {¶ 20} Generally, the introduction of evidence that the defendant has committed a crime independent of the offense for which he is on trial is inadmissible. State v. Hector (1969), 19 Ohio St.2d 167, 175. However, the Second District Court of Appeals found that where the trial court sustained the objection, the statement was neither inflammatory nor intentional, and the questioning did not dwell on the subject, the trial court did not abuse its discretion in granting a mistrial motion. Statev. Jones (1992), 83 Ohio App.3d 723, 737. "Juries are presumed to follow the trial court's instructions, including instructions to disregard testimony." State v. Jones, 90 Ohio St.3d 403, 414, 2000-Ohio-187.
 {¶ 21} We find that the trial court did not abuse its discretion in determining that a mistrial was not merited as a result of Christy's remark. The trial court took immediate curative action to ensure that the testimony, if heard by the jury, would not be considered. The trial court properly exercised its discretion and no prejudice resulted. Hale's first assignment of error is overruled.
Assignment of Error No. 2:
 {¶ 22} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT OVERRULED HIS MOTION FOR A NEW TRIAL."
 {¶ 23} Hale argues that the trial court should have granted a new trial pursuant to Crim.R. 33(A)(1) because of Christy's remarks on direct testimony that referenced his other criminal act. He maintains that the statement was prejudicial and irrelevant.
 {¶ 24} Crim.R. 33(A)(1) states:
 {¶ 25} "(A) A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
 {¶ 26} "(1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial."
 {¶ 27} The granting of a new trial is within the sound discretion of the trial court, and an appellate court cannot reverse the trial court's order unless there has been an abuse of that discretion. Statev. Shepard (1983), 13 Ohio App.3d 117, 119. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v.Adams (1980), 62 Ohio St.2d 151, 158. "When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court." State v.Morton, Summit App. No. 21047,
2002-Ohio-6458, at ¶ 42, citing to Pons v. Ohio State Med. Bd.,66 Ohio St.3d 619, 621, 1993-Ohio-122.
 {¶ 28} As stated earlier, in reply to a question as to when she had last spoken with Hale, she replied "[t]he night he shot through the house —."
 {¶ 29} Hale argues that because of Christy's statement, the jury found him guilty of using force in the rape of the child for which the court statutorily had to sentence him to life in prison. He asserts that the statement indicates he is a forceful and violent person and therefore it was prejudicial. Assuming that the jury disregarded the trial court's curative instructions and that it did hear the statement, we find the statement did not prejudice Hale.
 {¶ 30} It is not obvious from the incomplete statement that Hale fired a weapon into Dalrymple's home or that he was convicted of this act and serving time in jail. Further, there was other testimony presented as to Hale's propensity for violence. Christy testified that he had bitten her during sex, burned her leg with a cigarette, and become "more controlling," "more dominating" and "meaner" as their relationship progressed.
 {¶ 31} Finally, Hale's counsel immediately objected to the statement and the trial court cautioned the prosecutor about asking questions pertaining to this issue and directed Christy to only answer the question asked. The trial court noted at the hearing on appellant's motion for a new trial that he doubted the jury heard the answer, as Christy "was so soft-spoken." Moreover, the trial court issued curative instructions to the jury. Juries are presumed to follow the trial court's instructions. Jones, 90 Ohio St.3d at 414.
 {¶ 32} Hale has not demonstrated that the jury disregarded the trial court's instructions or that the trial court abused its discretion by denying his motion for a new trial. Accordingly, Hale's second assignment of error is overruled.
Assignment of Error No. 3:
 {¶ 33} "APPELLANT'S CONVICTION FOR RAPE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 34} Hale maintains that he is innocent of the crime and that he was convicted on circumstantial evidence. He argues that there is not enough evidence for a jury to find him guilty of the crime.
 {¶ 35} The standard the court follows for determining whether a conviction is against the manifest weight of the evidence is summarized as:
 {¶ 36} "The court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weights heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, quoting State v. Martin (1983), 20 Ohio App.3d 172.
 {¶ 37} Hale argues that he has consistently denied raping the child and that he cooperated with the police, allowing them to search the apartment. He maintains that the officers were not able to find the object that penetrated the child in the apartment. He also argues that there is no physical evidence linking him to the crime because no bodily fluids, hair, tissue or other matter were found on the child. He asserts that the child allowed him to hold her while she was being photographed and reached out to him for comfort. However, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 38} Dalrymple testified that he picked up the child that morning from his mother's home. He took her to the doctor, where she had no visible injuries. Christy testified that she picked her up at 4:00 p.m. and did not notice any injuries. Before going to the grocery store, Christy changed the child's diaper and did not notice any injuries or observe any blood.
 {¶ 39} She further stated that when she came home, the child was whiny and had red eyes, like she had been crying. Hale showed Christy the bite mark on the child's arm, and the bruise darkened as the evening passed. Hale changed the child's diaper once while Christy was at the store and again while Christy was making dinner. Christy testified that Hale had been acting strangely all evening, moving back and forth between she and the child while she made dinner, like he was nervous. After he left because he was angry at losing in a card game, Christy checked the last changed diaper and there was blood in it, and bloody wipes. When she changed the child's diaper, there was blood in that as well.
 {¶ 40} At the hospital, Christy testified that Hale told her not to say anything about the bloody diaper because it would "make him look bad." He also offered her a pill to help calm her down.
 {¶ 41} There was evidence that the child was raped. The tear went far into the child's vagina. The emergency room doctor concluded that the tear resulted from a forced entry. The child's doctor at the sexual abuse clinic at Children's Hospital concluded the child suffered penetrating injury. She also noted that there were two tears across the child's hymen.
 {¶ 42} The weight given to the evidence and the credibility of the testimony are primarily for the trier of facts. Id. We find there was enough evidence presented for the jury to determine that Hale had forcibly raped the child. The jury did not lose its way and create a miscarriage of justice. Accordingly, Hale's third assignment of error is overruled.
Assignment of Error No. 4:
 {¶ 43} "THE EVIDENCE WAS INSUFFICIENT TO FIND APPELLANT GUILTY OF RAPE."
 {¶ 44} Hale argues that because there is no direct evidence that he committed the rape, there was insufficient evidence for the jury to convict him.
 {¶ 45} When an appellate court reviews a claim that a conviction is not supported by sufficient evidence, its inquiry focuses primarily upon the adequacy of the evidence. Thompkins, 78 Ohio St.3d at 386. Sufficiency is a term of art that tests whether, as a matter of law, the evidence presented at trial is legally sufficient to sustain a verdict. Id. "The standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 46} The prosecution was required to prove that Hale raped the child with specification of force in violation of R.C. 2907.02(A)(1)(b) and (B). R.C. 2907.02(A)(1)(b) states specifically, "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * the other person is less than thirteen years of age, whether or not the offender knows the age of the person." R.C.2907.02(B) speaks to the force specification and pertinently states, "If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(1)(b) of this section shall be imprisoned for life."
 {¶ 47} Hale argues that "there needs to be higher quality of evidence" in order to convict him of rape with a specification of force. He maintains that there is no motive, there is evidence that the child is not afraid of him, and that he has consistently denied the charges. However, the prosecution introduced evidence that the child was forcibly raped and that Hale was the perpetrator of the crime.
 {¶ 48} The prosecution introduced the testimony of the emergency room doctor and the Children's Medical Center doctor. They testified that the wounds were deeply penetrating, resulting from forced entry.
 {¶ 49} The prosecution introduced evidence as to the child's demeanor and health on the day of the rape. Before Christy left for the store, the child was in good health. Christy had changed her diaper and there were no problems. Christy returned home and learned that Hale had changed the child's diaper again. Christy checked the diaper and saw blood. Further, Christy testified that Hale was acting nervously. She also testified that he had previously burnt her with a cigarette lighter and bit her while having sex.
 {¶ 50} When viewing the evidence presented in a light most favorable to the prosecution, we find that there was sufficient evidence for the jury to convict Hale of rape with a specification of force. Hale's fourth assignment of error is overruled.
 {¶ 51} The judgment of the trial court is affirmed.
YOUNG, P.J., and POWELL, J., concur.
[1] Christy has three children, an older child, M.D. and Joshua Hale, Jr.